# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRADEN MAUER-BURNS,<br><br>              Plaintiff,<br><br>      v.<br><br>LIVE NATION ENTERTAINMENT, INC., JOHN/JANE 1-10, fictitious persons; ABC CORP. 1-10, fictitious entities,<br><br>              Defendants. | Civil Action No. 1:23-cv-21976-CO-MJS<br><br>**Return Date:**  February 5, 2024 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

 

Christopher J. Capone, Esq.
**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Phone: (908) 516-1050
Fax: (908) 516-1051
*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*

FP 49194318.2

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ........................................................................................................ 1

II.  PROCEDURAL HISTORY .......................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................ 3

IV.  STANDARD OF REVIEW ........................................................................................... 3

V.   LEGAL ARGUMENT .................................................................................................. 5

    A.       Plaintiff Lacks Standing To Bring An NJLAD Claim ......................................... 5

    B.       Any Alleged Claims Are Barred By The NJLAD's Two Year Statute of Limitations. ........................................................................................................... 8

    C.       The Complaint Admittedly Fails to State A Prima Facie Claim ......................... 9

CONCLUSION ................................................................................................................... 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................10

*Brown v. Philip Morris Inc.*,
  250 F.3d 789 (3d Cir. 2001)........................................................................................9

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006)........................................................................................4

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)......................................................................................4

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158, 121 S. Ct. 2087 (2001).....................................................................6, 7

*Central Jersey Freightliner, Inc. v. Freightliner Corp.*,
  987 F. Supp. 289 (D.N.J. 1997)..................................................................................6

*Constantine v. New Jersey Dep't of Banking & Ins.*,
  2023 WL 2625007 (D.N.J. Mar. 24, 2023) (O'Hearn, J., *quoting Bell Atl.
  Corp. v. Twombly*, 550 U.S. 544 (2007))................................................................3, 4

*Domino's Pizza, Inc. v. McDonald*,
  546 U.S. 470 (2006)................................................................................................6, 8

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*,
  7 F.3d 357 (3d Cir. 1993)............................................................................................4

*Gross v. R.T. Reynolds, Inc.*,
  487 Fed. Appx. 711 (3d Cir. 2012)..............................................................................6

*Horn v. Mazda Motor of Am., Inc.*,
  265 N.J. Super. 47 (App. Div.), *certif. denied*, 134 N.J. 483 (1993).........................5

*Illas v. Gloucester County Sheriff's Dept.*,
  2015 WL 778806 (D.N.J. 2015) .................................................................................8

*Kauffman v. Dreyfus Fund, Inc.*,
  434 F.2d 727 (3d Cir. 1970)........................................................................................8

*Kessler Inst. for Rehab., Inc. v. Mayor and Council of the Borough of Essex Fells*,
  876 F. Supp. 641 (D.N.J. 1995)..................................................................................8

*Nini v. Mercer Cnty. Cmty. Coll.*,
   406 N.J. Super. 547 (App. Div. 2009), *aff'd*, 202 N.J. 98 (2010)..............5

*Rubin v. Forest S. Chilton, 3rd, Mem'l Hosp., Inc.*,
   359 N.J. Super. 105 (App.Div.2003) ..............................................5

*Turner v. Wong*,
   363 N.J. Super. 186 (App. Div. 2003) ............................................5

*Vernon v. A & L Motors*,
   381 Fed.Appx. 164 (3d Cir.2010).................................................10

*Victor v. State*,
   203 N.J. 383 (2010) ...............................................................9

**Statutes**

42 U.S.C.A. § 1981................................................................6, 7

*N.J.S.A.* §2A:14–2(a) ..............................................................8

*N.J.S.A.* §10:5-1 et seq. ..........................................................1

*N.J.S.A.* §10:5-12(l) ..........................................................5, 10

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................1, 2, 3, 11

Defendant Live Nation Entertainment, Inc., d/b/a Live Nation ("Defendant" or "Live Nation") through counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits this Memorandum of Law in support of its Motion to Dismiss.

I.     **INTRODUCTION**

Plaintiff Braden Maurer-Burns ("Plaintiff" or "Mauer-Burns") attempts to assert a claim for violation of the "refusal to do business" provision of the New Jersey Law Against Discrimination, *N.J.S.A.* §10:5-1 et seq. ("NJLAD"). Mauer-Burns claim fails for three (3) independent reasons.

First, in order to state a claim under the NJLAD's "refusal to do business" provision, Mauer-Burns must first identify "an impaired contractual relationship" under which Mauer-Burns himself has rights. Mauer-Burns was not and has never been a party to a contract with Live Nation. On the contrary, Mauer-Burns admits, that any contract(s) sued upon were between Live Nation and non-party Drag Diva, LLC ("Drag Diva") or another entity which he owned. As a result, his claim fails at the most fundamental level under well-settled United States Supreme Court precedent.

Second, the NJLAD has a two-year (2) statute of limitations. The terms of any alleged contract between Live Nation and any Drag Diva entity terminated on December 28, 2019. Mauer-Burns did not file the Complaint until April 4, 2023. Thus, even if Mauer-Burns could somehow establish that he personally had rights under an actual or proposed contractual relationship with Live Nation, any such claim would be definitively time-barred.

Third, again, even if Mauer-Burns could overcome the failures outlined in the first two points above, his claim would nevertheless fail because to state a *prima facie* claim, he must either

allege (1) that Live Nation refused to contract with him because of his sexual orientation or (2) that Live Nation terminated his contract because of his sexual orientation.

Plaintiff fails to state a claim under the first theory since the Complaint admits that Live Nation "regularly contracted" with Drag Diva to "organize and produce drag-related content and shows." Plaintiff fails to state a claim under the second theory because the Complaint also admits "[Live Nation] decided that it no longer wanted to contract with the Mauer-Burns, and instead wanted to replace him with another LGBT company/individual to produce the drag content."

As a result, Plaintiff's Complaint should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6).

## II.  PROCEDURAL HISTORY

Mauer-Burns filed the Complaint in this matter, on April 3, 2023, in the Superior Court of New Jersey, Burlington County. (*Dkt. No., 1 at Ex. A.*)

On October 12, 2023, Mauer-Burns served Live Nation with a copy of the Summons and Complaint. (*Dkt. No., 1 at ¶2.*)

On November 6, 2023, this matter was timely removed to the District Court for the District of New Jersey. (*Dkt. No., 1.*)

On November 21, 2023, pursuant to the Hon. Christine P. O' Hearn, U.S.D.J.'s individual rules, Live Nation requested a pre-motion conference in connection with Defendant's request to dismiss the Complaint in its entirety, under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. (*Dkt. No., 5.*)

On December 14, 2023, the Court granted Live Nation permission to file the instant motion to dismiss. (*Dkt. No., 10.*)

### III. STATEMENT OF FACTS[1]

At all relevant times, Maurer-Burns, who identifies as a gay man "owned a business that would regularly contract with [Live Nation.]." (*Compl. at ¶¶1-2, 7-8, Capone Cert., Ex.1.*)

Mauer-Burns' Drag Diva business "helped create and produce drag-related content and shows." (*Id. at ¶6.*)

Live Nation regularly contracted with Drag Diva "to organize and produce drag-related content and shows." (*Id. at ¶¶1-2, 8.*)

The last contract between Live Nation and any Drag Diva entity, would have terminated on December 28, 2019. (*Capone Cert. at Ex.2.*)

Thereafter, according to the Complaint, Live Nation "decided that it no longer wanted to contract with [Maurer-Burns] and instead wanted to replace him with another LGBT company/individual to produce the drag content." (*Compl. at ¶12, Capone Cert. Ex.1*) The Complaint further alleges that "[t]he justification for not working with [Maurer-Burns] any longer was unproven allegations of harassment and misconduct." (*Id. at ¶14.*) Which, according to Mauer-Burns, was a pretext for unlawful sexual orientation discrimination. (*Id. at ¶¶21-22.*)

The First Count of the Complaint is brought against Live Nation. (*Id. at ¶¶5-27.*)

The Second Count of the Complaint is brought against fictitious individuals and business entities. (*Id. at ¶¶28-32.*)

### IV. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "sufficient factual allegations to state a claim that is plausible on its face.'" *Constantine v. New Jersey Dep't*

---

[1] What follows contains the factual allegations set forth in the Complaint unless otherwise indicated as a document expressly referenced in the Complaint.

*of Banking & Ins.*, 2023 WL 2625007 at *2 (D.N.J. Mar. 24, 2023) (O'Hearn, J., *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts in the Third Circuit apply a three-part analysis to assess whether a complaint meets the *Twombly/Iqbal* plausibility standard. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (*quoting Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (*citing Malleus*, 641 F.3d at 560). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) *quoting Iqbal*, 556 U.S. at 679)). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Fowler* 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (*quoting Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

4

(*quoting* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

V. **LEGAL ARGUMENT**

**A. Plaintiff Lacks Standing To Bring An NJLAD Claim.**

The NJLAD provides in pertinent part that it is unlawful:

> For any person to refuse to buy from, sell to, lease from or to, license, contract with or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of race, creed, color, national origin, ancestry, age, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status, liability for service in the Armed Forces of the United States, disability, nationality, or source of lawful income used for rental or mortgage payments of such other person or of such other person. . . .

*N.J.S.A.* §10:5-12(l).

While few cases construe this provision, it has been held to prohibit refusals from doing business with independent contractors based on the protected characteristics it enumerates. *E.g., Nini v. Mercer Cnty. Cmty. Coll.*, 406 N.J. Super. 547, 557 (App. Div. 2009), *aff'd*, 202 N.J. 98 (2010); *Rubin v. Forest S. Chilton, 3rd, Mem'l Hosp., Inc.*, 359 N.J. Super. 105, 110–11 (App.Div.2003); *Horn v. Mazda Motor of Am., Inc.*, 265 N.J. Super. 47, 63 (App. Div.), *certif. denied*, 134 N.J. 483 (1993). The provision also prohibits discriminatory terminations of contracts. *Rubin*, 359 N.J. Super. at 11 ("If, for example, an organization refused to enter into a contract with an architect solely because the architect was a woman, violation of N.J.S.A. 10:5–12(l) could not be doubted. The same result must follow if the architect's contract is terminated solely because the architect is a woman.")

Because case law addressing this provision of the NJLAD is limited, "[i]n interpreting the LAD, the federal law has consistently been considered for guidance." *See Turner v. Wong*, 363 N.J. Super. 186, 210 (App. Div. 2003) (*citing Chisolm v. Manimon*, 97 F. Supp. 2d 615, 621

5

(D.N.J. 2000) ("[t]he New Jersey courts generally interpret the LAD by reliance upon federal court decisions construing the analogous federal antidiscrimination statutes.).

As was recognized in *Turner,* the "federal statute, 42 U.S.C.A. § 1981, accomplishes the same result [as the LAD] . . . as it reads in pertinent part . . . [f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship . . . " *Id.* at 353–54.

A claim under Section 1981 or the NJLAD, "must initially identify an impaired 'contractual relationship, under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). In other words, relief is only available where "discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Gross v. R.T. Reynolds, Inc.*, 487 Fed. Appx. 711, 717 (3d Cir. 2012).

With the foregoing as background, under well-settled legal precedent, it is firmly established that "a shareholder- even the sole shareholder- does not have standing to assert claims alleging wrongs to the corporation." *Central Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 309 (D.N.J. 1997) (*quoting Jones v. Niagara Frontier Transportation Auth*., 836 F.2d 731, 736 (2d Cir. 1987)) (emphasis added). This legal proposition is premised on the fact that an owner and the corporation are two distinct and legally different entities with varying rights and responsibilities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S. Ct. 2087, 2091 (2001). Indeed, the United States Supreme Court has emphasized that incorporation's basic

purpose "is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individual who created it, who own it, or whom it employs." *Id.*

In *Domino's*, the plaintiff was the president and sole shareholder of a corporation, JWM Investments, Inc. ("JWM"), which contracted with Domino's Pizza to construct several restaurants. *Id.* at 1073. Following the execution of these contracts, a dispute arose between one of Domino's agents and the plaintiff, and ultimately, the contractual relationship with JWM was terminated. *Id.* The plaintiff subsequently attempted to pursue Section 1981 and other claims, in his individual capacity, based upon alleged discriminatory remarks made against him. *Id.*

A unanimous Supreme Court held in favor of Domino's and squarely rejected the plaintiff's claim that he had individual standing to bring claims against Domino's. The Court reasoned that even a sole shareholder and president of a corporation cannot make any claims on the basis of Section 1981, where he or she personally has no contractual relationship with a defendant. *Id.* at 1075-1077. The Court explained that under:

> fundamental corporation and agency law - indeed, it can be said to be the whole purpose of corporation and agency law - ... the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts.

*Id.* at 1076. The Court stressed that where a contract is entered into between corporate parties, any impairment to the contracting party caused by alleged bias in the contracting process is an impairment to the corporation itself and not to an individual shareholder. *Id.* at 1075-1077. The Court noted that to hold otherwise would result in "satellite litigation of immense scope," which the Court specifically disapproved of, as a matter of public policy. *Id.* at 1078.

Thus, the Court acknowledged the legal distinction between corporate shareholders and corporate entities to determine that shareholders cannot assert individual claims against parties that

7

contract with the corporate entity because those claims are particular to the corporation. *Id.* at 1075-1078.

Here, Mauer-Burns is not a party to any contract with Live Nation. On the contrary, the Complaint attempts to conceal but admits that any contractual relationship sued upon is between Live Nation and non-party Drag Diva. (*Compl. at ¶¶1-2, 6-8.*) Alternatively, Mauer-Burns has since conflictingly asserted:

> there was no physical contract in place with any particular entity, instead Defendant worked directly with the Plaintiff, and specific venues would either pay the Plaintiff or a corporate entity. Upon information and belief, these corporate entities were always wholly owned by the Plaintiff and not always the same entity.

(*Dkt. No. 8, at p. 2.*)

In the interest of brevity, the Complaint should be dismissed under either scenario because Mauer-Burns admittedly has no personal claims against Live Nation as a matter of law. *See Domino's Pizza*, 546 U.S. at 477 (concluding that plaintiffs must identify injuries flowing from their own contractual relationship); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970); *Kessler Inst. for Rehab., Inc. v. Mayor and Council of the Borough of Essex Fells*, 876 F. Supp. 641, 650 (D.N.J. 1995) ("prudence dictates that 'the Plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (*quoting, Warth v. Seldin*, 422 U.S. 490, 499 (1975))).

### B. Any Alleged Claims Are Barred By The NJLAD's Two Year Statute Of Limitations.

Claims under the NJLAD are subject to a two-year statute of limitations. *Illas v. Gloucester County Sheriff's Dept.*, 2015 WL 778806, at *4 (D.N.J. 2015) (*citing Montells v. Haynes*, 133 N.J. 282, 292-93 (1993) (concluding a two-year statute of limitations of *N.J.S.A.* §2A:14–2(a) applies to NJLAD claims)).

Mauer-Burns filed the Complaint in this matter on April 4, 2023.  Any alleged conduct occurring prior to April 4, 2021, is time-barred.  Insofar as the terms of the last potential contract, as referenced in the Complaint between Live Nation and any Drag Diva entity expired in December 2019, the statute of limitations had long since expired when Mauer-Burns filed the Complaint.  For this reason, too, the Complaint should be dismissed.

### C. The Complaint Admittedly Fails To State A Prima Facie Claim.

Independently, Mauer-Burns' claim fails even if he could establish that he had an actual or proposed contractual relationship with Live Nation and could overcome the statutory time bar.

More specifically, to state a prima facie claim, Mauer-Burns must either allege (1) that Live Nation refused to contract with him because of his sexual orientation or (2) that Live Nation terminated his contract because of his sexual orientation.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)

The Complaint fails to state a claim under the first theory since it admits:

6. Plaintiff owned a company, Drag Diva LLC, which helped create and produce drag-related content and shows.

7. Plaintiff, as a gay man, was in a protected class under New Jersey's Law Against Discrimination.

8. **Plaintiff would regularly contract with Defendant Live Nation to organize and produce drag-related content and shows.**

(*Compl.* ¶¶6-8, *Capone Cert., Ex.1*)

The Complaint fails to state a claim under the second theory, because it also admits:

12. [Live Nation] decided that it no longer wanted to contract with the Plaintiff, and **instead wanted to replace him with another LGBT company/individual to produce the drag content.**

(*Id.* at ¶12.)  *See, e.g., Victor v. State*, 203 N.J. 383, 408–09 (2010) (noting "the prima facie elements for a complaint arising from the failure to hire" are: (1) "plaintiff falls within a protected

9

FP 49194318.2

class;" (2) "plaintiff was qualified for the work for which he or she applied;" (3) "plaintiff was not hired; and" (4) defendant "**continued to seek others with the same qualifications or hired someone with the same or lesser qualifications who was not in the protected status**." (**emphasis added**); *see also Vernon v. A & L Motors*, 381 Fed.Appx. 164, 166–67 (3d Cir.2010) (holding plaintiff may establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) "**circumstances exist that give rise to an inference of unlawful discrimination."**

It is acknowledged that Mauer-Burns also alleges that: (1) "Defendant had a history of limiting the number of LGBT companies, acts, and performers with which it contracted"; and (2) "Plaintiff has a history of working with performers who face similar allegations [of harassment and misconduct as did Plaintiff] who are straight." (*Compl. ¶¶10, 14-16.*) However, simply making a conclusory assertion in the Complaint that similarly situated contractors were treated differently is not enough to survive a motion to dismiss. *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[L]abels and conclusions" will "not do"); This is especially true when no alleged comparators are even identified, and no facts have been presented to demonstrate how such alleged unidentified comparators are similarly situated. Further, while Live Nation emphatically denies any and all accusations against it, even if accepted as true, Plaintiff's claim that Live Nation should have or was required to contract with both Drag Diva and another LGBT organization (*id. at ¶13*) is not a recognized cause of action under the plain language of the NJLAD or any other equal employment opportunity statute. *See N.J.S.A. §10:5-12(l) supra*.

## VI. CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Complaint should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**FISHER & PHILLIPS LLP**
Attorneys for Defendants

By: *s/Christopher J. Capone*
Christopher J. Capone

Dated: January 3, 2024